UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRANK VELIZ,

       Plaintiff,                                Case No. 05-60039

v.                                            District Judge Marianne O. Battani
                                               Magistrate Judge R. Steven Whalen

MICHAEL BOUCHARD, et al.,

       Defendants.
_____/

## REPORT AND RECOMMENDATION

On February 16, 2005, Plaintiff filed the instant action pursuant to 42 U.S.C. §1983, alleging First, Eighth, and Fourteenth Amendment violations by Defendants following his January 23, 2003 arrest. Before the Court is Defendant Philip Durocher, M.D.'s *Motion for Summary Judgment* [Docket #48], filed April 16, 2008, which has been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that the motion be GRANTED and that claims against Dr. Durocher be DISMISSED WITH PREJUDICE. I recommend further that Defendant's request for costs and attorneys' fees be DENIED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Complaint contains the following allegations. On January 23, 2003, Plaintiff was arrested for Criminal Sexual Conduct ("CSC") involving a person under 13. *Complaint* at ¶18. Directly following his arrest, he was placed in the medical unit of the Oakland County Jail because of complications from diabetes. *Id.* at ¶19. After remaining in the

medical unit for one month, Plaintiff was transferred to a ten-man cell. *Id*. at ¶20. Plaintiff alleges that sometime after midnight in July or August, 2003, three of his cell mates gagged him, then beat and kicked him, breaking both of his ankles and "tearing all the ligaments in his legs around his ankles." *Id.* at ¶22. He alleges that he reported the attack and his injuries to an officer the following morning, but was denied medical care. *Id*. at ¶23.

Plaintiff states that in the following days, officers repeatedly denied his requests for medical care despite the fact that his injuries prevented him from walking. *Id*. at ¶¶24-25. Plaintiff alleges that he was not examined by medical staff until three weeks after the attack, at which time x-rays showed the presence of a left ankle fracture. *Id*. ¶27-28. He states that "within days" of the examination, he was sent to an orthopedist who placed both ankles in casts and prescribed the use of a wheelchair *Id.* at ¶28.

Plaintiff alleges that Defendant Duroucher, an Oakland County Jail physician, stated that shoulder injuries sustained in the attack required surgery, but informed Plaintiff that the Sheriff's Department refused to approve surgery. *Id.* at ¶33. Plaintiff alleges that because he was denied proper treatment he continues to experience "severe pain." *Id.* at ¶¶33, 36-10. He requests the issuance of a declaratory judgment stating that "all defendants" violated his Eighth Amendment rights and well as compensatory and punitive damages.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). A mere scintilla of

evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III. ANALYSIS

**A. Personal Capacity Claims**

Defendant Durocher, sued in both his personal and official capacities, argues that he

is entitled to summary judgment as a matter of law.[1] Defendant contends that the jail's medical clinic was first informed of Plaintiff's ankle problem via a June 22, 2003 "sick call slip," in which Plaintiff requested a pair of crutches for a broken foot. *Defendant's Brief*; *Docket #48* at 4, Exhibit 3. The following day, Defendant contends that after examining Plaintiff "he immediately ordered x-rays," which revealed a small avulsion fracture. *Id.*, Exhibits 4, 5. Defendant also contends that he ordered an orthopedic consultation and ordered the use of a wheelchair. *Id.*; Exhibits 4, 6. Notes created on June 30, 2003 by orthopedic surgeon Dr. Brenda Sanford state that Plaintiff "cannot really come up with any definite episode of trauma," noting that Plaintiff admitted that he had broken both ankles in the past. *Id.* at 5, Exhibit 7 at 3. Dr. Sanford prescribed the use of a walking cast. *Id.*

Citing additional treating records, Defendant also notes that he examined Plaintiff on September 15, 2003 in response to Plaintiff's complaints of a "mass" on his shoulder. *Id.* at 7, Exhibit 13, 14 at 3. Defendant authorized a surgical evaluation of the mass which confirmed his initial diagnosis of a lipoma. *Id.*; Exhibit 14, 15. The consulting surgeon determined that the benign tumor should be followed on a "prn [as needed]" basis. *Id.*; Exhibit 15.

In regard to allegations regarding the shoulder *injury*, Defendant Durocher states that Plaintiff was first examined by a non-defendant physician on September 29, 2003. *Id.* at 6, Exhibits 9, 10. He states further that he first addressed Plaintiff's shoulder complaint on

---

[1] Defendant also argues that dismissal should be granted on the basis on qualified immunity. Because I find that there was no violation of Plaintiff's constitutional rights, I agree that he is entitled to dismissal on that basis. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Higgason v. Stephens*, 288 F.3d 868, 876-877 (6th Cir. 2002). Under *Saucier*, the threshold question is whether a constitutional violation occurred. If it did not, a state officer or agent acting in the course of his or her official duties is protected by qualified immunity.

October 6, 2003, noting that an x-ray report showed no evidence of a fracture or dislocation. *Id.* at Exhibits 11, 12. Defendant denies that he ever recommended shoulder surgery, noting that x-rays showed "no significant findings." Exhibit 16, ¶11.

As a pretrial detainee at the time of the incidents in question, Plaintiff had a constitutional right to medical care. *Roberts v. City of Troy,* 773 F.2d 720, 723 (6th Cir. 1985). Although pretrial detainees' rights are analyzed under the Fourteenth Amendment's Due Process Clause, they are completely analogous to the Eighth Amendment rights of prisoners, *Barber v. City of Salem, Ohio,* 953 F.2d 232, 235 (6th Cir. 1992), in order "to avoid the anomaly of extending greater constitutional protection to a convict than to one awaiting trial." *Roberts,* 773 F.2d at 723. Hence, pretrial detainees have a Due Process right to receive medical care, which can be analyzed under an Eight Amendment paradigm. *Rich v. City of Mayfield Heights,* 955 F.2d 1092, 1096 (6th Cir. 1992).

Under the Eighth Amendment, prison and jail officials may not act with deliberate indifference to the medical needs of their prisoners. *Estelle v. Gamble,* 429 U.S. 97, 103-104; 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). A deliberate indifference claim has two components, one objective and the other subjective. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Comstock v. McCrary,* 273 F.3d 693, 702 (6th Cir. 2001). Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Id.* Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.*

Deliberate indifference to medical needs may be established by showing an interruption of a prescribed plan of treatment, or a delay in medical treatment. *Estelle v.*

*Gamble, supra; Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992). However, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860, n.5 (6th cir. 1976). *See also Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1999), citing *Estelle v. Gamble, supra*, 97 S.Ct. at 292 ("Deliberate indifference, however, does not include negligence in diagnosing a medical condition").

Treatment records for the period in question showing the lack of a fracture, dislocation, or other operable condition refute Plaintiff's claim that he required surgery or that his condition was "sufficiently serious" to meet the first prong of the *Farmer* test. *Docket # 48*, Exhibits 9-16.

Further, even assuming that his allegations of intractable shoulder pain, taken as true (*Complaint* at ¶33), meet the objective component of *Farmer*, his claim most certainly falters on the subjective prong. Treatment records show that Plaintiff was examined for complaints of a fatty tumor eight days after submitting a medical kite and seen just four days after reporting shoulder pain on September 25, 2003. *Id.*; Exhibits 9-10, 13-14. Both the opinion of a consulting surgeon and x-ray results defeat Plaintiff's claim that Defendant withheld necessary surgery or was deliberately indifferent to his medical needs.[2] *Id.*; Exhibits 12, 15-16. Whether or not the treatment given was efficacious in alleviating the Plaintiff's alleged discomfort is beside the point; this is clearly not a case where a prisoner was afforded either no treatment or grossly inadequate treatment. *See, e.g., Borretti v. Wiscomb*, 930 F.2d 1150 (6th Cir. 1991). More to the point is *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078,

---

[2]Defendant also states that during Plaintiff's pretrial detention, he was seen "over 177 times" by Oakland County Jail medical staff. *Defendant's Brief* at 11.

1084, 89 L.Ed.2d 251 (1986), cited in *Borretti*, where the Supreme Court held:

> "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety. This reading of the Clause underlies our decision in *Estelle v. Gamble, supra,* [429 U.S.] at 105-106 [97 S.Ct. at 291-92], which held that a prison physician's "negligen[ce] in diagnosing or treating a medical condition" did not suffice to make out a claim of cruel and unusual punishment. It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."

In this case, the Defendant responded reasonably to the Plaintiff's medical complaints. *See Farmer v. Brennan, supra*, 114 S.Ct. at 1982-83 ("prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted"). At most, Plaintiff's claim goes to the adequacy of treatment, which is not actionable under §1983. *Westlake v. Lucas, supra*.

### B. Official Capacity Claims

Likewise, claims against Defendant Durocher in his official capacity should be dismissed. Claims for monetary relief against defendants in their official capacities, *i.e*, in their capacity as agents of the state under 42 U.S.C. §1983, are subject to dismissal on the basis of the immunity granted by the Eleventh Amendment.[3] *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). While "immunity does not apply if the lawsuit is filed against a state official for purely injunctive relief enjoining the official from violating federal law," *Ernst v. Rising,* 427 F.3d 351, 358 -359 (6th Cir. 2005); *Ex parte Young,* 209 U.S. 123, 155-56, 28 S.Ct. 441, 452, 52 L.Ed. 714 (1908), Plaintiff's

---

[3] Defendant, noting that "he is not formally employed by the state," concedes that "for purposes of this Motion that he is arguably a state actor." *Defendant's Brief* at 13 (*citing West v. Atkins,* 487 U.S. 42, 54-57, 108 S.Ct. 2250, 2258-2260, 101 L. Ed. 2d 40 (1988).

request for a declaratory judgment stating that Defendant violated his civil rights, like his personal capacity claim, founders on the absence of evidence supporting the Fourteenth Amendment allegations.

**C. Attorneys' Fees and Costs**

Finally, Defendant requests attorneys' fees and costs. *Docket #48* at ¶5. The Court has discretion to award such fees where the plaintiff's action was "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). However, "[a]n award of attorney fees against a losing plaintiff in a civil rights action 'is an extreme sanction, and must be limited to truly egregious cases of misconduct.'" *Riddle v. Egensperger,* 266 F.3d 542, 547 (6th Cir. 2001)(*citing Jones v. The Continental Corp.,* 789 F.2d 1225, 1232 (6th Cir.1986). Accordingly, a defendant's fee petitions in a §1983 case must be carefully scrutinized in order "to strike a careful balance between not chilling civil rights claims and protecting the judicial process from abuse." *Goldstein v. Costco Wholesale Corp.*, 337 F.Supp.2d 771, 774 (E.D.Virginia 2004)(*citing Blue v. United States Dept. of the Army*, 914 F.2d 525, 535 (4th Cir. 1990).

With regard to costs,"[i]t is incumbent upon the unsuccessful party to show circumstances sufficient to overcome the presumption favoring an award of costs to the prevailing party." *White & White, Inc. v. American Hospital Supply Corp.,*746 F.2d 728, 731 (6th Cir. 1986); 28 U.S.C. § 1920. The language of Fed. R. Civ. P. 54(d) "creates a presumption in favor of awarding costs, but allows denial of costs at the discretion of the trial court." *Singleton v. Smith,* 241 F.3d 534, 539 (6th Cir. 2001).

Although Plaintiff's claims against present Defendant lack merit, neither the allegation that he received inadequate medical care nor any of the arguments made in the subsequent

pleadings amount to an "egregious" behavior. Defendant has not established that he is entitled to the extreme sanction of attorneys' fees. Further, despite the fact that Defendant need not show egregious behavior for an award of costs, *Singleton, supra,* identifies several factors a losing party may assert to overcome the presumption favoring taxation of costs. Considerations include "good faith, the difficulty of the case, the winning party's behavior, and the necessity of the costs." *Id.* at 539. Although the court found that the winning party's ability to pay its own costs was irrelevant, the indigency of the losing party may be considered in modifying the amount and terms of payment. *Id.* at 540.

I note that while Defendant's prayer for relief contains a requests for costs "so wrongfully incurred," he does not allege "the necessity of the costs" or that the case was particularly difficult. While he presents a winning argument for summary judgment, it does not appear that he engaged in extensive discovery before filing the present motion. For these reasons, and because Defendant has not refuted Plaintiff's allegation of poverty (*Docket #28* at 2) the Court should act within its discretion to deny Defendant's request for both attorney's fees and costs.

## IV. CONCLUSION

For these reasons, I recommend that [Docket #48] be GRANTED and that the claim against Defendant Durocher be DISMISSED WITH PREJUDICE. I recommend further that Defendant's request for costs and attorneys' fees be DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v.*

*Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: December 4, 2008

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on December 4, 2008.

s/Susan Jefferson
Case Manager